ZINTER, Justice
(concurring in result).
[¶ 27.] I agree that the guarantee was not ultra vires. In my view, it was a lawful activity even without relying on the $250,000.00 payment that was used to reduce the amount of the initial loan. The guarantee was lawful simply because the Facilities Management Contract (FMC) was in furtherance of Marquette/Wells Fargo’s own rights and it was an integral part of Marquette/Wells Fargo’s authorized lending transaction with the University’s owners.
[¶ 28.] First, the FMC was in furtherance of Marquette/Wells Fargo’s own rights. It has not been specifically mentioned that Marquette/Wells Fargo apparently did not have a first security interest in the HVAC, water heating, kitchen, and lighting equipment at the University.[7] And, there is no dispute that such equipment was indispensable to the functional viability of Marquette/Wells Fargo’s collateral; ie. the University and its physical plant. Therefore, on the limited record we have before us, in the event of default, it was through the FMC that Marquette/Wells Fargo acquired a right to obtain the equipment that was indispensable to making its collateral viable.[8]
*633 [¶ 29.] Second, the FMC was an integral part of the University loan. As a part of the loan, Marquette/Wells Fargo made a default on the FMC a default on the loan. Furthermore, Marquette/Wells Fargo acknowledged that the FMC transaction was important to maintain the equipment and minimize its risk. The loan approval documentation specifically indicated that the FMC transaction was being pursued in “an effort to minimize risk in the maintenance of the HVAC system.” Obviously, by entering into the FMC, Marquette/Wells Fargo was being assured that the equipment necessary to make its collateral valuable would be maintained (and actually updated), increasing the likelihood of the University’s success and improving the chances that the loan would be repaid.
[¶ 30.] I would simply hold that these two interests were “substantial,” i.e. “incidental” to Marquette/Wells Fargo’s authorized lending activities within the meaning of 12 C.F.R. § 7.1017 and the relevant OCC decisions cited by the Court. See supra, ¶ 15. Therefore, Marquette/Wells Fargo was authorized to guarantee the FMC, and the judgment of the circuit court must be reversed.
[¶ 31.] Regarding the remand, I would note that it may include consideration of Marquette/Wells Fargo’s contractual defenses of lack of consideration and lack of officer authority to enter into the contract. Marquette/Wells Fargo raised these issues before the circuit court. However, because the circuit court’s summary judgment was based solely upon a national bank’s authority to guarantee the FMC, these contractual defenses were not considered. In its appellate brief, Marquette/Wells Fargo also requests a remand to challenge whether the FMC constitutes a guarantee. It does not appear this issue was raised before the circuit court. I would leave it to the circuit court to determine whether that issue was preserved by presenting it below.

. The Court appears to suggest that Marquette/Wells Fargo did have a security interest in the HVAC system. See supra, ¶ 18. However, at the hearing on the motions for summary judgment, Northwestern specifically indicated "that Wells Fargo did not have a security interest in the HVAC system.” And, Marquette/Wells Fargo did not dispute that assertion at the hearing. Moreover, although there is no dispute that Marquette/Wells Fargo had a blanket security interest in buildings and equipment, Marquette/Wells Fargo has not disputed Northwestern's numerous statements in its brief that, when Si-Tanka defaulted on the FMC, Northwestern was entitled to repossess the equipment. Therefore, although the record is not clear, it appears that at a minimum, any Marquette/Wells Fargo security interest in the equipment at issue was inferior to Northwestern's rights in the collateral.

. No argument has been raised regarding "fixtures” and the potential incorporation of Northwestern's equipment into Marquette/Wells Fargo’s collateral and security interest. The parties have treated the equipment as severable and removable from the *633 Marquette/Wells Fargo's collateral. Therefore, as the parties have, we must assume the equipment was removable and not subject to a first security interest of Marquette/Wells Fargo. Moreover, although Marquette/Wells Fargo does note that it was secured on the "property of the University,” Marquette/Wells Fargo does not argue that it was fully secured or over-secured. Consequently, Marquette/Wells Fargo had a substantial interest in the equipment at issue.